UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at CHATTANOOGA

LEBRON WILKEY and LISA WILKEY, )
)
    *Plaintiffs,* )
v. ) No.1:06-cv-72
) *Edgar / Lee*
GOLDEN FEATHER REALTY )
SERVICES, INC., )
)
    *Defendant/Third-Party Plaintiff,* )
)
v. )
)
UNITED STATES DEPARTMENT OF )
HOUSING AND URBAN )
DEVELOPMENT, )
)
    *Third-Party Defendant.* )

**MEMORANDUM**

Plaintiffs Lebron Wilkey and Lisa Wilkey originally brought this action in the Circuit Court of Hamilton County, Tennessee against Defendant Golden Feather Realty Services, Inc. ("Golden Feather") for breach of a settlement agreement entered into by Plaintiffs and Golden Feather to repair certain defects in their home. Golden Feather then filed a Third-Party Complaint against Third-Party Defendant Department of Housing and Urban Development ("HUD") alleging that HUD was responsible for any breach of the settlement agreement. HUD removed the action to this Court and now brings a motion to dismiss the Third-Party Complaint filed by Golden Feather. [Court Doc. No. 8-1]. Although HUD does not state its basis for the motion to dismiss, this Court assumes that HUD brings the motion to dismiss pursuant to Fed. R.

-1-

Civ. P. 12(b)(1) for lack of jurisdiction and Fed. R. Civ. P. 12(b)(5) for insufficiency of service of process. Golden Feather opposes the motion to dismiss. [Court Doc. No. 15].

**I.     Background**

The parties appear to agree on the facts relevant to the motion to dismiss. The Wilkeys filed a complaint in the Circuit Court of Hamilton County, Tennessee alleging that Golden Feather had entered into a contract to perform certain repairs on the Wilkey's residence in Chattanooga, Tennessee. The Wilkeys allege in their complaint that Golden Feather has refused to complete the repairs, leaving the Plaintiffs' home "without floor is [sic] some rooms, with electrical power lines on the ground, with inadequate support under some floors, with a leaking roof and other such items." [Court Doc. No. 8-2]. Plaintiffs seek $19,290 in damages for failure to complete the repairs itemized in the contract and $50,000 in damages "for the intolerable and burdensome conditions under which they were forced to live." *Id.*

Attached to the Plaintiffs' original complaint is a document entitled "Full and Final Release and Settlement Agreement." [Court Doc. No. 8-2]. In the settlement agreement the parties stipulate that the Wilkeys entered into a contract for the purchase of a home from HUD. The parties agree that at the time of the sale, Golden Feather was managing the property. After the sale of the property closed, the Wilkeys discovered "latent defects" on the property. The Wilkeys alleged that HUD and Golden Feather were responsible for the defects, although HUD and Golden Feather both denied any liability. *Id.* In the agreement Golden Feather agreed to complete a number of repairs to the structure of the house at a maximum cost of $19,290. *Id.* The agreement further provided that the repairs would be at HUD's expense. In exchange for the repairs, the Wilkeys agreed to release Golden Feather and HUD from any claims against them.

The Wilkeys and representatives of Golden Feather and HUD all signed the settlement agreement. *Id.*

Following the filing of Plaintiffs' complaint against Golden Feather, Golden Feather filed a Third-Party Complaint against HUD. [Court Doc. No. 8-3]. Golden Feather's complaint against HUD alleges that although Golden Feather has spent over $16,000 on repairs at the Wilkey's property, HUD has breached its duty to reimburse Golden Feather as stated in the settlement agreement entered into with the Wilkeys.

Following the filing of the Third-Party Complaint, HUD removed this action from state court to this Court pursuant to 28 U.S.C. § 1442(a)(1). [Court Doc. No. 1-1]. HUD has now moved to dismiss the Third-Party Complaint against it.

**II.     Standard of Review**

This Court assumes that HUD brings this motion pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction and Fed. R. Civ. P. 12(b)(5) for insufficiency of service of process. The Sixth Circuit has discussed the district court's review of a motion to dismiss for lack of subject matter jurisdiction:

> Because at issue in a factual 12(b)(1) motion is the trial court's jurisdiction–its very power to hear the case–there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case. In short, no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims. Moreover the plaintiff will have the burden of proof that jurisdiction does in fact exist.

*RMI Titanium Co. v. Westinghous Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996) (quoting *Mortensen v. First Federal Savings and Loan Ass'n*, 549 F.2d 884, 890-91 (3d Cir. 1977)).

**III.    Analysis**

HUD claims that the Third-Party Complaint against it should be dismissed because Congress has not waived HUD's sovereign immunity. In the alternative, HUD claims that the Court of Federal Claims has exclusive jurisdiction over Golden Feather's claims against it pursuant to the Tucker Act, 28 U.S.C. § 1491(a)(1), and the Contract Disputes Act ("CDA"), 41 U.S.C. § 601 *et seq*. HUD also claims that Golden Feather has not properly served all the appropriate parties with a summons and complaint pursuant to Fed. R. Civ. P. 4(i).

Golden Feather responds that Congress expressly waived HUD's sovereign immunity in the National Housing Act ("NHA"), 12 U.S.C. § 1702, and that the Court of Federal Claims does not have exclusive jurisdiction over Golden Feather's claims because neither the Tucker Act nor the CDA apply to Golden Feather's claims. Golden Feather also claims that it is not bound by the service requirements of Fed. R. Civ. P. 4(i) because Plaintiffs originally brought this action in state court, and Golden Feather filed its Third-Party Complaint in state court. The Court will address these arguments in turn.

      A.      **Sovereign Immunity and Subject Matter Jurisdiction**

HUD is correct that "[j]urisdiction over any suit against the Government requires a clear statement from the United States waiving sovereign immunity." *United States v. White Mountain Apache Tribe*, 537 U.S. 465, 472, 123 S.Ct. 1126, 155 L.Ed.2d 40 (2003) (citing *United States v. Mitchell*, 445 U.S. 535, 538-39, 100 S.Ct. 1349, 63 L.Ed.2d 607 (1980)); *see also*, *Federal Deposit Ins. Corp. v. Meyer*, 510 U.S. 471, 475, 114 S.Ct. 996, 127 L.Ed.2d 308 (1994). In addition, a consent to sue must not be inferred, but rather, must be "unequivocally expressed." *White Mountain Apache Tribe*, 537 U.S. at 472, 123 S.Ct. 1126 (quoting *Mitchell*, 445 U.S. at 538, 100 S.Ct. 1349).

The Tucker Act contains such a waiver. *White Mountain Apache Tribe*, 537 U.S. at 472 (citing *United States v. Mitchell*, 463 U.S. 206, 212, 103 S.Ct. 2961, 77 L.Ed.2d 580 (1983)). The Tucker Act states in part:

> The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.

28 U.S.C. § 1491(a)(1). The Little Tucker Act also creates limited jurisdiction in district courts for certain disputes against the United States not exceeding $10,000. 28 U.S.C. § 1346(a)(1). The parties agree that the Wilkeys seek damages in excess of $10,000.

In addition, the CDA provides that:

> Unless otherwise specifically provided herein, this chapter applies to any express or implied contract (including those of the nonappropriated fund activities described in sections 1346 and 1491 of Title 28) entered into by an executive agency for–
> (1) the procurement of property, other than real property in being;
> (2) the procurement of services;
> (3) the procurement of construction, alteration, repair or maintenance of real property; or,
> (4) the disposal of personal property.

41 U.S.C. § 602(a). An executive agency includes HUD. *See* 41 U.S.C. § 601(2), 5 U.S.C. § 101. The CDA provides that claims against the government by a contractor should be submitted to the contracting officer "for a decision." 41 U.S.C. § 605(a). A contractor may appeal a decision of the contracting officer by filing an appeal with the agency board of contract appeals or by appealing directly to the Court of Federal Claims. 41 U.S.C. § 606, 609.

The first question for this Court is whether Golden Feather's action against HUD is an action against the United States for purposes of jurisdiction under the Tucker Act. The Sixth

Circuit has determined that "if an action rests within the exclusive jurisdiction of the Claims Court under the Tucker Act, 28 U.S.C. §§ 1346 and 1491, the district court does not have jurisdiction regardless of other possible statutory bases." *A.E. Finley & Assoc., Inc. v. United States*, 898 F.2d 1165, 1167 (6th Cir. 1990) (citing *Amoco Production Co. v. Hodel*, 815 F.2d 352, 359 (5th Cir. 1987)). *But see, Bowen v. Massachusetts*, 487 U.S. 879, 910 n. 48, 108 S.Ct. 2722, 101 L.Ed.2d 749 (1988); *C.H. Sanders Co., Inc. v. BHAP Housing Develop. Fund Co., Inc.*, 903 F.2d 114, 119 (2d Cir. 1990).

Golden Feather argues that the Tucker Act does not apply to this action because Golden Feather's action against HUD is not an action against the United States. Instead, it argues the National Housing Act ("NHA"), 12 U.S.C. § 1701 *et seq.*, applies and waives HUD's sovereign immunity. 12 U.S.C. § 1702 provides that "[t]he Secretary shall, in carrying out the provisions of [various chapters of the NHA], be authorized, in his official capacity, to sue and be sued in any court of competent jurisdiction, State or Federal." 12 U.S.C. § 1702. Courts have recognized that "sue and be sued" clauses like the one in the NHA operate to waive sovereign immunity. *See e.g.*, *C.D. Barnes Assoc., Inc. v. Grand Haven Hideaway Limited Partnership*, 406 F.Supp.2d 801, 814 (W.D. Mich. 2005) (citing *Far West Federal Bank, S.B. v. Office of Thrift Supervision*, 930 F.2d 883, 888 (Fed. Cir. 1991)); *S.S. Silberblatt, Inc. v. East Harlem Pilot Block*, 608 F.2d 28, 36 (2d Cir. 1979).

In *Federal Housing Authority v. Burr*, the Supreme Court analyzed whether Congress had waived HUD's predecessor's immunity. 309 U.S. 242, 245, 60 S.Ct. 488, 84 L.Ed. 724 (1940). In analyzing a "sue and be sued clause," the Court noted that "it must be presumed that when Congress launched a governmental agency into the commercial world and endowed it with

authority to 'sue or be sued', that agency is not less amenable to judicial process than a private enterprise under like circumstances would be." *Id.*

Several federal cases have also addressed whether HUD is the equivalent of the United States for purposes of the Tucker Act. For example, in *Portsmouth Redevelopment and Housing Authority v. Pierce*, the plaintiff provider of low income housing filed suit in federal district court against the Secretary of HUD to enjoin HUD from withholding operating subsidies it alleged HUD owed it under an annual contributions contract it had signed with HUD. 706 F.2d 471, 472-73 (4th Cir. 1983). The Secretary moved to dismiss the suit arguing that the action was a contract claim against the United States, and jurisdiction was exclusive to the Court of Federal Claims under the Tucker act. *Id.* at 473. The Fourth Circuit agreed with the Secretary and held that the district court lacked jurisdiction to hear the case. *Id.*

In making its determination the Fourth Circuit in *Portsmouth Redevelopment and Housing Authority* noted that:

> It is not necessary that the United States be denominated as a party. An action against a federal agency or official will be treated as an action against the sovereign if 'the judgment sought would expend itself on the public treasury or domain, or interfere with the public administration, or if the effect of the judgment would be to restrain the Government from acting, or compel it to act.'

706 F.2d at 473 (quoting *Dugan v. Rank*, 372 U.S. 609, 620, 83 S.Ct. 999, 1006, 10 L.Ed.2d 15 (1963)). The Fourth Circuit then concluded:

> [t]he funds appropriated to HUD for payment of operating subsidies clearly originate in the public treasury, and they do not cease to be public funds after they are appropriated. Therefore, both because this is a suit against a federal official and any judgment recovered would expend itself on the public treasury, we construe this action as one against the United States for purposes of the Tucker Act.

*Portsmouth Redevelopment and Housing Authority*, 706 F.2d at 473-74.

Other cases involving suits against HUD or its Secretary have held differently than the *Portsmouth Redevelopment and Housing Authority* court.  For example, in *Industrial Indemnity, Inc. v. Landrieu* the plaintiff brought suit against the Secretary of HUD to recover construction retainages it argued HUD owed it that had not been paid.  615 F.2d 644, 645 (5th Cir. 1980).  The claim arose under HUD's mortgage insurance program, known as the General Insurance Fund ("GIF").  *Id.*  The court agreed with the *Portsmouth Redevelopment and Housing Authority* court that funds for a judgment for the plaintiff "must be recoverable from funds in the possession and control of the Secretary that are severed from Treasury Funds and Treasury control."  *Id.* at 646.  The Fifth Circuit held that the suit was against the Secretary of HUD and not the United States because a judgment could be paid out of HUD's GIF, "a separate fund in the control and possession of the Secretary."  *Id.*

Similarly, in *S.S. Silberblatt, Inc.*, the Second Circuit noted that any judgment for a plaintiff in an action against the Secretary of HUD must be paid from funds in the control of the Secretary and not from general Treasury funds.  608 F.2d at 36 (2d Cir. 1979) (citing *Burr*, 309 U.S. at 250, 60 S.Ct. 488).  The court noted that "[t]his requirement is satisfied if the judgment could be paid out of funds appropriated under the National Housing Act and in the control or subject to the discretion of the Secretary."  *S.S. Silberblatt, Inc.*, 608 F.2d at 36.  The court held that the action against the Secretary of HUD for monies owing on a project financed under the NHA was against the Secretary and not the United States because the judgment could be paid out of funds at the Secretary's discretion.  *Id.*

The Sixth Circuit has analyzed the three decisions outlined above in its unpublished decision, *Housing Products Co. v. Flint Housing Comm.*, 2000 WL 1720612 (6th Cir. 2000).  In

-8-

*Housing Products Co.* the district court dismissed a third-party complaint filed against HUD for lack of jurisdiction and failure to state a claim upon which relief could be granted. *Id.* at *1. Although the Sixth Circuit noted that the housing commission did not appeal the district court's determination that it lacked jurisdiction and had waived that issue, the Court proceeded to analyze the district court's decision on jurisdiction. *Id.* at *1-3. The plaintiff subcontractor in *Housing Products Co.* brought suit against a low income housing commission and a general contractor that had failed to pay the plaintiff for its goods supplied to the general contractor relating to work on building an apartment complex for low-income, elderly tenants. *Id.* The general contractor cross-claimed against the commission for monies it alleged were due under an agreed change order, and the commission filed a third-party complaint against HUD for funds it alleged HUD owed it pursuant to the change order. *Id.*

In reviewing the district court's conclusion that it lacked jurisdiction, the Sixth Circuit noted:

> It would appear that the district court appropriately determined that it lacked subject matter jurisdiction in this case. The parties do not dispute that more than $10,000 is at issue here; therefore, the Tucker Act's vesting of exclusive jurisdiction in the Court of Federal Claims must be recognized as long as the suit against HUD is an attempt to reach the treasury of the United States, and not merely a private insurance fund administered by that federal department. In *Industrial Indemnity, Inc.* and *S.S. Silberblatt, Inc.*, the Fifth and Second Circuits, respectively, were able to conclude that exclusive jurisdiction over contract actions was not vested in the Court of Federal Claims. In *Industrial Indemnity, Inc.*, however, the judgment to be rendered against the Secretary of HUD could 'be paid out of money in the General Insurance Fund that is a separate fund in the control and possession of the Secretary .' . . . Even though in *S.S. Silberblatt, Inc.*, the Second Circuit found that the funds at issue were payable 'out of funds appropriated under the National Housing Act and in the control or subject to the discretion of the Secretary, . . . we think the better view is that expressed in *Portsmouth Redevelopment and Housing Authority* that even funds appropriated to HUD that clearly originate in the public treasury–as opposed to private insurance funds–'do not cease to be public funds after they are appropriated.'

-9-

*Id.* at *2 (citations omitted). *See also*, *Carlyle Gardens Co. v. Delaware State Housing Auth.*, 659 F.Supp. 1300, 1305-06 (D. Del. 1987) (determining to follow decision in *Portsmouth Redevelopment and Housing Authority* rather than decisions in *S.S. Silberblatt* and *Industrial Indemnity*). The Sixth Circuit determined that the low-income housing funds at issue in *Housing Products Co.* were guaranteed by funds in the general Treasury, citing 42 U.S.C. § 1437c(c)(3), and that the third-party complaint thus sought funds from the United States rather than HUD. *Id.* at *3. After analyzing the subject matter jurisdiction issue at length, the Sixth Circuit noted that any alleged error in the district court's ruling on that issue had been waived because it was not challenged on appeal. *Id.* Even though it constitutes dicta, the *Housing Products Co.* opinion does express support for the notion that the Tucker Act provides exclusive jurisdiction over contract claims against HUD in which the damages will be paid from Treasury funds.

The Court recognizes that some courts disagree with the Treasury funds/agency funds distinction. For example, in *C.D. Barnes Assoc., Inc. v. Grand Haven Hideaway Ltd. Partnership*, the court reviewed the applicable case law regarding sovereign immunity for HUD and found authority persuasively arguing that the "treasury funds/agency funds test that courts have melded onto the waiver provided by sue and be sued clauses in the name of *Burr* is both unwarranted and illogical." 406 F.Supp.2d 801, 817 (W.D. Mich. 2005) (citing *Auction Co. of America v. FDIC*, 132 F.3d 746, 752 (D.C. Cir. 1997)). After analyzing the decision in the *Auction Co. of America* case, the district court in *C.D. Barnes* rejected the reasoning of *Portsmouth Housing Redevelopment Authority*,

> because to hold that public monies appropriated to HUD or any other governmental agency can never be used to satisfy a judgment obtained by a waiver under a sue and be sued clause would render such clauses ineffectual. The fact that some of the monies within the agency fund come from the public

Treasury is irrelevant to the operation of sue and be sued clauses.
406 F.Supp.2d at 818. The court did, however, find that damages due the plaintiff could come from a fund within the HUD Secretary's discretion, the GIF. *Id.*

Other courts have also taken a different approach to the jurisdiction question. For example, the Second Circuit has held that jurisdiction exists if there is a valid grant of subject matter jurisdiction and a valid waiver of sovereign immunity. *C.H. Sanders Co., Inc.*, 903 F.2d at 119. It also resolves the agency funds/Treasury funds question by directing lower courts to order the Secretary of HUD to satisfy any judgment out of funds within his or her control because "[i]t is only as to such funds that the Secretary's immunity has been waived." *Id.* at 120 (citing *Burr*, 309 U.S. at 250-51); *see also, Jackson Square Assoc. v. U.S. Dep't of Housing and Urban Develop.*, 797 F.Supp. 242, 245 (W.D.N.Y. 1992). In *Far West Federal Bank* the Federal Circuit determined that although some of the funds available to the federal agency had originated in the Treasury, such "'Treasury backup' does not bar the grant of monetary relief by the district court pursuant to the 'sue and be sued' clause, or impose exclusive Tucker Act jurisdiction." 930 F.2d at 890.

The Court first notes that it has subject matter jurisdiction pursuant to 28 U.S.C. § 1442(a)(1). That provision states that an agency of the United States may remove a civil action initiated in state court to federal district court. *Id.* The U.S. Supreme Court has held that a district court may have jurisdiction over such cases as long as the federal agency asserts a defense that arises under federal law. *Mesa v. California*, 489 U.S. 121, 136-37, 109 S.Ct. 959, 103 L.Ed.2d 99 (1989). In this action HUD's defense of sovereign immunity is a defense that arises under federal law and is sufficient to confer jurisdiction. *See Rawlins v. M&T Mortgage*

-11-

*Corps.*, 2005 WL 2143334 *2 (S.D.N.Y. 2005).

In this action Golden Feather argues that this is a suit against HUD, not the United States, and that, therefore, the Tucker Act does not apply. Most courts continue to look at the source of funding for damages in the suit as the first question to analyze in determining whether the Tucker Act applies. *See Jackson Square Assoc.*, 797 F.Supp. at 246. This action is one for damages payable to Golden Feather as reimbursement for housing repairs it argues it has made on the Wilkeys' single-family home for which HUD is obligated to pay under the terms of a settlement agreement entered into with the Wilkeys and Golden Feather. HUD argues that damages due to Golden Feather would be paid from Treasury funds, citing 12 U.S.C. § 1735(1). Golden Feather has identified the GIF and the Mutual Mortgage Insurance Fund ("MMIF") as possible sources of funding for damages. *See* 12 U.S.C. § 1735c and 12 U.S.C. § 1708. HUD argues that the GIF only applies to multi-unit housing developments and thus its funds could not be used to pay the damages in this case and that Congress retains control over funds in the MMIF under 12 U.S.C. § 1735(1).

Congress established the MMIF to "be used by the Secretary as a revolving fund for carrying out the provisions of [the subchapter on mortgage insurance] with respect to mortgages insured under section 1709 of this title . . ." 12 U.S.C. § 1708(a). Congress allocated $10,000,000 in funds for the establishment of the MMIF. *Id.* 12 U.S.C. § 1709 authorizes the Secretary to insure mortgages for single family residences. 12 U.S.C. § 1709(a); *see also, Lee v. Kemp*, 731 F.Supp. 1101, 1103 (D.C.D.C. 1989). Congress also granted the Secretary broad discretion in disposing of single-family properties in 12 U.S.C. § 1710(g). However, 12 U.S.C. § 1735(1) provides that funds available to the Secretary pursuant to 12 U.S.C. § 1708 "shall be

-12-

deemed an indebtedness to the United States of the particular insurance fund involved." 12 U.S.C. § 1735(1). In addition, unlike the court in *C.D. Barnes Assoc.*, this Court does not have an admission by HUD or other evidence in the record assuring it that HUD would pay any damages in this action from funds available at its discretion. 406 F.Supp.2d at 818.

This Court is also aware that, in a case against HUD, this Court previously held the Tucker Act conveyed exclusive jurisdiction for claims against the United States over $10,000 to the Court of Federal Claims. *Smith v. Jackson*, 2005 WL 2740800 (E.D. Tenn. 2005), No. 3:05cv232 [Court Doc. No. 30]. This Court dismissed the plaintiff's claim against HUD for lack of jurisdiction. The Court is further aware of the Sixth Circuit's unpublished opinion in *Housing Products Co.*, espousing the view expressed in *Portsmouth Redevelopment and Housing Authority*. 2000 WL 1720612 (6th Cir. 2000); 706 F.2d at 472-73.

The jurisdictional question raised in this action is a close one due to conflicting Circuit Court precedent. However, this Court's prior decision on the issue, as well as some insight into relevant Sixth Circuit views lead this Court to conclude that it lacks jurisdiction in this action. Golden Feather has not demonstrated to this Court's satisfaction that funds for any damages in this action would not be linked with the public Treasury.

The Court must also consider HUD's argument that the settlement agreement in this case is covered exclusively by the CDA. The CDA applies to contracts between HUD and another party for the procurement of non-real property; the procurement of services; the procurement of construction, alteration, repair or maintenance of real property; or the disposal of personal property. 41 U.S.C. § 602(a). The Sixth Circuit has held that "for the CDA to apply, it must first be determined that the claims asserted are 'essentially contractual' in nature." *RMI*

*Titanium Co.*, 78 F.3d at 1136 (quoting *Megapulse, Inc. v. Lewis*, 672 F.2d 959, 967 (D.C. Cir. 1982)); *see also, B & B Trucking, Inc. v. United States Postal Serv.*, 406 F.3d 766, 770-71 (6th Cir. 2005). Further, a plaintiff's "characterization of its claims is not controlling," but rather whether a claim is essentially a contract action will depend on " 'the source of the rights upon which the plaintiff bases its claims, and upon the type of relief sought . . .' " *RMI Titanium Co.*, 78 F.3d at 1136 (quoting *Megapulse, Inc.*, 672 F.2d at 968).

In this action, HUD entered into an agreement with Golden Feather and the Wilkeys under which Golden Feather would procure repair services for the Wilkeys' residence, HUD would pay for the repairs, and in exchange, the Wilkeys would release both HUD and Golden Feather from any claims it had against them. [Court Doc. 8-3]. This Court finds that the settlement agreement at issue here is contractual and fits within the CDA as procurement of services, as well as procurement of construction, alteration, or repair of real property.

### B.     Service of Process

HUD also argues that Golden Feather's third-party complaint should be dismissed for failure to serve HUD in accordance with Fed. R. Civ. P. 4(i). Federal Rule of Civil Procedure 4(i) requires that service upon a United States agency be effected by serving the United States attorney in the district in which the action is brought, sending a copy of the summons and complaint by registered mail or certified mail to the United States Attorney General, and sending a copy of the summons and the complaint by registered or certified mail to the agency. Fed.R.Civ.P. 4(i)(2)(A). The parties agree that Golden Feather served the appropriate United States Attorney in this case, and Golden Feather has provided evidence indicating that it served a field office director for HUD in Memphis, Tennessee. [Court Doc. No. 11-2]. HUD only raises

-14-

deficiency of service for the United States Attorney General.

Golden Feather argues that because it filed the Third-Party Complaint in state court prior to HUD's removal of the action to this Court, it is bound by the Tennessee Rules of Civil Procedure and not by the Federal Rules of Civil Procedure relating to service of process.

HUD cites two unpublished district court decisions not within this Circuit, as well as a U.S. Supreme Court case, *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.* in support of its position. 526 U.S. 344, 119 S.Ct. 1322, 143 L.Ed.2d 448 (1999). In *Murphy Bros.* the Court held that "a named defendant's time to remove is triggered by simultaneous service of the summons and complaint, or receipt of the complaint, 'through service or otherwise,' after and apart from service of the summons, but not by mere receipt of the complaint unattended by any formal service." *Id.* at 347-48, 119 S.Ct. 1322. The issue in *Murphy Bros.* is not the issue present in this case. The issue in this case pertains to whether a party is required to comply with the federal rules of service when bringing an action against a U.S. agency, even though the party filed the complaint in state court prior to removal to federal court and complied with state law service requirements.

In *Bell v. Internal Revenue Service*, 2001 WL 721736 (E.D. Cal. 2001), a pro se tax protester moved for remand to state court and raised a question about the timeliness of the IRS's notice of removal under 28 U.S.C. § 1446(b). The court determined that removal was timely because the Government had not been served pursuant to Fed. R. Civ. P. 4(i). *Id.* at *2. It does not appear that the pro se plaintiff raised the issue of whether the federal rules for service applied when he initiated the action in state court. Again, in *Linden v. Chase Manhattan Corp.*, the plaintiff claimed that her suit should be remanded to state court because the removal was invalid.

1999 WL 518836 *1 (S.D.N.Y. 1999). The court found that the plaintiff had never properly served the United States under Fed. R. Civ. P. 4(i), and therefore, removal was timely. *Id.* The plaintiff apparently did not raise the issue of whether service under state rules of procedure applied rather than Fed.R.Civ.P. 4(i).

Golden Feather relies on *Wilson v. United States Dep't of Agriculture, Food and Nutrition Serv.* for its argument that it is not bound by the requirements of Fed. R. Civ. P. 4(i). 584 F.2d 137 (6th Cir. 1978). In *Wilson* the Sixth Circuit addressed whether the Secretary of Agriculture could require a state trial court to follow federal rules for service of process in cases involving the Food Stamp Act. 584 F.2d at 138. The Sixth Circuit determined that the Secretary had no authority under the Food Stamp Act to require federal rules of procedure to apply to state court cases involving the Department of Agriculture's food stamp program. *Id.* at 141. The Court noted that "[t]he traditional principle of federalism is that, as long as state rules of practice do not 'impose unnecessary burdens upon rights of recovery authorized by federal laws,' neither Congress nor the federal courts has the power to change them." *Id.* (citing *Brown v. Western Railway of Alabama*, 338 U.S. 294, 298, 70 S.Ct. 105, 108, 94 L.Ed. 100 (1949)). The Court determined that the Secretary was not burdened by the state rules for service of process and that the Government had filed its petition for removal too late. *Id.* at 141-42. The *Wilson* case provides this Court with some Sixth Circuit authority regarding the applicability of state rules of procedure, rather than federal rules of procedure, while an action is pending in state court.

Other courts have also determined that state court rules of procedure are applicable to lawsuits prior to removal to federal court. For example, in *Nealey v. Transportacion Maritima Mexicana, S.A.*, the Ninth Circuit noted:

> The Federal Rules 'apply to civil actions removed to the United States district courts from the state courts and govern procedure after removal.' Fed.R.Civ.P. 81(c). . . . If process was properly issued and timely served under state law prior to removal, such service remains sufficient afterwards, as common sense dictates, 28 U.S.C. § 1448 assumes, and *Beecher v. Wallace*, 381 F.2d 372, 373 (9th Cir. 1967), implies.

662 F.2d 1275, 1282 (9th Cir. 1980); *see also Eccles v. National Semiconductor Corp.*, 10 F.Supp.2d 514, 519 (D. Md. 1998) (noting that it is "well-settled that state law governs the sufficiency and service of process before removal"); *Griffen v. City of Oklahoma City*, 3 F.3d 336, 341 (10th Cir. 1993). As the court in *Eccles* noted, "Rules 4(m) and 81, both as read together and as interpreted by federal courts, establish that state law governing service of process . . . applies before removal, and that federal law applies after removal." 10 F.Supp.2d at 519. The Court concludes that the weight of published authority, as well as the federal procedural rules themselves indicate that state procedural rules apply to actions in state court prior to their removal to federal court. The parties have not directed this Court to any published authority directly addressing this issue that finds an exception to this "well-settled rule" when a government agency is sued.

**IV.     Conclusion**

After reviewing the record and the applicable law, the Court concludes that it will **GRANT** HUD's motion to dismiss for lack of jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1). This action will be **REMANDED** to the Circuit Court of Hamilton County, Tennessee for further proceedings pursuant to 28 U.S.C. § 1447©.

>                      */s/ R. Allan Edgar*
>                    R. ALLAN EDGAR
>              UNITED STATES DISTRICT JUDGE

Case 1:06-cv-00072   Document 16   Filed 08/25/06   Page 17 of 17   PageID #: 17